

B. Egan, for libelant.

C. B. Singleton and R. H. Browne, for claimants.

WOODS, Circuit Judge. The evidence satisfies me that if due and usual diligence had been used in mooring the barge and bracing her from the bank, the accident which caused the loss of the barge could not have happened. It appears to be necessary, in order to keep barges moored at the bank from being violently driven on shore by the swell of passing boats, to brace them off from the bank with spars, and it is the invariable custom to do this.

It appears from the evidence of Charles Walker, one of libelant's witnesses, that before the Natchez passed up the river the coal-barge had, at the time of the passage of a small stern-wheel steamer, the Lessie Taylor, tripped one of her spars, and while the spar was in that condition the Natchez passed. The effect of the passing of the Natchez was to make a swell and swing the barge against the bank. This evidence is corroborated by the testimony of Charles Walker, also a witness for libelant.

Small stern-wheel steamers like the Taylor do not make sufficient commotion in the water to disturb the coal barges, if they are properly moored and braced. The bracing of the barge must have been defective or the spar would not have tripped and become useless by reason of the passing of the Taylor. Had the barge been skillfully and properly braced, her spars could not have been displaced, and the damage that was caused by the passing of the Natchez could not have occurred.

The Mississippi river is a public highway, open and free for the passage of all classes and sizes of water-craft. They have the right to follow the usual channels, and it is incumbent on those who have rafts, barges or other water-craft moored to the banks to foresee and provide against accidents liable to result from the swell of passing steamers. Williams v. Wilcox, 8 Adol. & E. 314; Morrison v. Thurman, 17 B. Mon. 249; Sherlock v. Bainbridge, 41 Ind. 35. The Natchez was in the usual channel for ascending steamers. The proximate cause of the injury and damage was the carelessness and unskillfulness of those in charge of the mooring and bracing of the barge. The steamer was where she had the right to be. She did not transcend her own rights or invade those of others, and she cannot be held responsible for the injury. Libel dismissed.

## Case No. 4,704.

Ex parte FAXQN.

In re LAURIE et al.

[1 Lowell 404; [1] 4 N. B. R. 32 (Quarto, 7).]

District Court, D. Massachusetts. 1869.

E. Avery & G. M. Hobbs, for petitioners.
B. F. Brooks, for assignees.

LOWELL, District Judge. An assignee in bankruptcy, unless restrained by the terms of the lease itself, may adopt or reject a

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

term, as he finds most beneficial for the creditors, and may take a reasonable time to decide the question. If he takes the lease he makes himself liable, on behalf of the estate, for the rent, including at least that of the current quarter, and this he must consider in determining whether to adopt the lease. The petitioners would have done more wisely, perhaps, to insist on this at the time, but I see no ground for saying they have waived any of their rights. In theory of law, the assignees have been in possession ever since the petition was filed, and not only from the date of the adjudication, which is merely a finding that the petition is well founded. If the quarter-day had come round pending the petition, the bankrupt would have been authorized, if he found it necessary for the best interests of his creditors, to pay the rent in order to save an ejectment. I have more than once permitted this to be done. And the assignees, by the course they have taken, affirm this to be a case in which such a course was prudent and proper.

The only reported case which I have seen is very short, and gives no reasons or arguments, but the decision agrees with my opinion. There the assignees were required to pay rent from the date of the petition. In re Merrifield [Case No. 9,465]. I do not know that any question was raised in that case, to distinguish the date of the petition from that of the adjudication; but if an assignee is to pay only for his own occupancy, he must be charged from the date of the assignment. There is no argument which will make him liable from the adjudication that does not apply to the date of the petition, which is the true beginning of the proceedings, and the controlling date in all these matters. Petition granted.

## Case No. 4,705.

### FAXON et al. v. DYSON'S ADM'RS.

[1 Cranch, C. C. 441.] [1]

Circuit Court, District of Columbia. July Term, 1807.

Mr. Youngs, for defendants,

[1] [Reported by Hon. William Cranch, Chief Judge.]

E. J. Lee, for plaintiffs

Demurrer overruled. Judgment for the plaintiffs, de bonis testatoris.

## Case No. 4,706.

### FAXON v. RUSSELL.

[See 154 U. S. 644, 14 Sup. Ct. 1201.]

## Case No. 4,707.

### FAXON v. RUSSELL.

[22 Int. Rev. Rec. 375.]

Circuit Court, D. Massachusetts. Sept. 6, 1876.

C. L. Woodbury and F. W. Hurd, for plaintiffs.

G. P. Sanger, Dist. Atty., and P. Cummings, Asst. Dist. Atty., for defendant.

LOWELL, District Judge. By the agreed facts signed and filed in the case it appears that the plaintiffs, in the autumn of 1873, made several importations from Liverpool into the port of Boston, of a certain cloth, variously styled in the invoices as "Union Gusset," "Union Webb," and "Union Elastic Webb." It was intended to be used for making the gores or gussets of congress boots; and was a manufacture of india rubber, silk and cotton, and was webbing. The collector assessed upon this merchandise a duty of fifty per cent. ad valorem, under section 8 of the act of July 14, 1862 (12 Stat. 552), as a manufacture of india rubber, silk, and other materials. The plaintiffs claimed: 1st. That it should be assessed under section 13 of the same act (12 Stat. 556), which imposes a duty of 30 per cent. on "braces, suspenders, webbing, or other fabrics composed wholly or in part of india rubber, not otherwise provided for;" and, 2d. That this tax should be reduced under section 2 of the act of June, 1872 (17 Stat. 232), which makes a reduction of 10 per cent. on "all manufactures of india rubber, gutta percha, or straw,